# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **PENNYMAC LOAN SERVICES, LLC.,** ) | **CASE NO. 1:16CV1002** |
| ) | |
| Appellant, ) | **JUDGE CHRISTOPHER A. BOYKO** |
| ) | |
| vs. ) | **OPINION AND ORDER** |
| ) | |
| **WINSLOW H. CROCKER, III,** ) | |
| ) | |
| Appellee. ) | |

**CHRISTOPHER A. BOYKO, J.**:

This matter comes before the Court upon Appellant PennyMac Loan Services, LLC's Appeal from a final judgment of the Bankruptcy Court for the Northern District of Ohio and request for oral argument. For the following reasons, and based upon the applicable law, arguments and briefs, the ruling of the Bankruptcy Judge is affirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Creditor-Appellant, PennyMac Loan Services, LLC, ("PennyMac") is a Delaware limited liability company which holds a first lien mortgage on three properties belonging to Debtor-Appellee Winslow H. Crocker, III ("Crocker"). On November 23, 2014, Crocker filed for Chapter 11 bankruptcy relief in the Bankruptcy Court. Crocker owned several

properties at the time he filed bankruptcy, including the three properties on which PennyMac holds a first lien mortgage that Crocker uses for rental income.  In June of 2015, Crocker filed adversary proceedings to value each of the properties, to void PennyMac's first lien mortgages to the extent each mortgage exceeds the fair market value of the collateral and to bifurcate PennyMac's claims pursuant to Section 506(a) of the United States Bankruptcy Code.  PennyMac and Crocker dispute the value of each property.  Only the property located at 14351 Superior Avenue, Cleveland Heights, Ohio ("Superior property"),  is the subject of this appeal and a separate appeal has been filed with this Court regarding valuation of the property located on Glenmont Road.

On February 23, 2015, PennyMac filed a proof of claim for the Superior Property claiming a secured amount of $75,216.68  According to the Office of Auditor Property Information, Cuyahoga County, Ohio, in 2015, the Superior Property had a market value of $86,100.00.  PennyMac relies on an appraisal conducted in February of 2016 to demonstrate that the Superior Property is worth $85,000, whereas, Crocker relies upon an appraisal conducted in February of 2015 valuing the Superior Property at $37,000.  PennyMac's appraiser believes that the appraisal conducted in February of 2015 is outdated and flawed because it used comparable sales that are not similar to the Superior Property and because it failed to take into account the rental nature of the Superior Property.

On April 12, 2016, the Bankruptcy Court held a consolidated valuation hearing, heard testimony from three witnesses (Crocker, Crocker's appraiser and PennyMac's appraiser), weighed the evidence, and delivered an oral opinion and ruling regarding the fair market value of the properties.  The Court indicated that "in terms of valuation, [Crocker's

testimonies] do not really add too much to me in terms of trying to weigh the valuations of one expert appraiser versus another expert appraiser [...]." The Court considered Crocker's appraiser's appraisals "a little sloppier and less detailed" than PennyMac's appraiser's, although Crocker's appraiser works in the area and is more familiar with the particular neighborhood and conditions that might affect the properties' values. The Bankruptcy Judge discussed his familiarity with the neighborhood of the properties and the way in which the Court's personal experience affected his decision regarding the value of the properties, stating:

> My knowledge of that area affects this opinion, and I understand I have to base my evidence on the record in the case, but I have some sort of general knowledge about this property and the area that affects my decision, and I don't know how to divorce myself from that knowledge, so I'm putting it on the record and saying I know -- I don't have any specific extra special knowledge about any of these individual properties, but I know the neighborhoods pretty well, and that's just part of the fact that I have grown up in that area and I know its current condition to some extent as well, and I don't know how to separate the various, you know, the effect of that knowledge, but that's the way it is and I don't think it biases me, but it certainly affects how I look at these -- this neighborhood, so to speak.

Ultimately, the Bankruptcy Court determined the fair market value of the Superior Property is $55,000. On April 26, 2016, PennyMac appealed to the Court from the oral ruling and the written judgment memorializing the oral ruling during the valuation hearing on April 12 and 13, 2016.

Crocker accepts PennyMac's statement of the case. Therefore, the facts are not in dispute.

II. **LAW AND ANALYSIS**

**STANDARD OF REVIEW**

Pursuant to 28 U.S.C. § 158(a), the district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, and, with leave of court, from interlocutory orders and decrees of bankruptcy judges.

The Bankruptcy Court's conclusions of law are reviewed de novo and its findings of fact are reviewed for clear error. *In re Lamar Crossing Apartments, L.P.* 464 B.R. 61, 2011 WL 6155714 (6th Cir., B.A.P Sept. 20, 2011). "Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* ( *In re Morgeson* ), 371 B.R. 798, 800 (6th Cir. B.A.P. 2007). The Bankruptcy Court's "finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lamar*, 464 B.R. at \*1 quoting *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985).

Bankruptcy Rule 8012 provides for oral arguments unless the District Judge determines after examination of the briefs and record that oral argument is not needed. The parties' requests for oral argument are denied because the briefs and record adequately present the facts and legal arguments.

**ISSUE PRESENTED**

**PennyMac's Arguments**

According to PennyMac, the Bankruptcy Court abused its discretion in relying on evidence outside of the record in determining the value of the Superior property. That is, the

Court used its own experience and familiarity with the neighborhood as evidence of the property's value, which is impermissible. PennyMac argues that the Bankruptcy Court's valuation determination was made in error and the error is prejudicial.

"Because the valuation process often involves the analysis of conflicting appraisal testimony, a Court must necessarily assign weight to the opinion testimony received based on its view of the qualifications and credibility of the parties' expert witnesses." *In re Holcomb Health Care Services, LLC,* 329 B.R. 622, 668 (Bankr. M.D. Tenn. 2004)(citing *In re Coates,* 180 B.R. 110, 112). Further, PennyMac properly cites:

> [V]aluation is ultimately the opinion of a particular appraiser and, as such, the weight to be accorded the opinion rests upon a number of factors frequently used by courts in evaluating appraisal testimony. A nonexclusive listing of these factors includes: the appraiser's education, training, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination, testimony on cross-examination, and overall ability to substantiate the basis for the valuation presented.[...] This court is more likely to be persuaded [..] by the consistency of the appraiser's conclusions measured against all of the admissible evidence bearing on the issue considered in the light of the direct and cross-examinations conducted in the proceeding.

*Buckland v. Household Realty Corp. (In re Buckland)*, 123 B.R. 573, 578 (Bankr. S.D. Ohio 1991). The *Buckland* Court stated that a trial court's obligation is "to filter and evaluate, from all the evidence offered, the admitted evidence which most persuasively focuses on the ultimate issue of valuation." *Id* at 579. Thus, according to PennyMac, "the role of the Bankruptcy Court is to sift through the appraisals and testimony and make a judgment as to the 'accuracy and credibility' of the appraisers." *In re Barbieri*, No. 00-22274-478, 2009 WL 5216963, at *10 (Bankr. E.D.N.Y. Dec. 29, 2009) (citing *In re Miami Beach Hotel Investors LLC*, 304 B.R. 532, 535 n.4 (Bankr. S.D. Fla. 2004)). Because the Bankruptcy Court Judge

admitted that Crocker's appraisal was "a little sloppier and less detailed," PennyMac contends that the Judge should have valued the Property at an amount closer to PennyMac's appraisal, rather than $30,000 less than PennyMac's appraisal and $18,000 more than Crocker's appraisal.

PennyMac further argues that there is no provision for a bankruptcy court judge to use its own experience and purported familiarity with the subject property as evidence because such information may skew a valuation. According to PennyMac, the Bankruptcy Court Judge admitted his familiarity with the neighborhood and improperly weighed this familiarity and experience as evidence in determining the fair market value of the Property. PennyMac states that the Bankruptcy Court Judge was familiar with the neighborhood but not with the Property itself and that the Bankruptcy Judge's experience significantly pre-dated the appraisals. Thus, PennyMac contends that the Bankruptcy Court improperly relied upon evidence outside of the record; and the Court's decision is inconsistent with the record developed by the parties at the hearing. Finally, PennyMac argues that the Bankruptcy Court relied upon itself as a third appraiser of the Property. Therefore, according to PennyMac, the Bankruptcy Court's determination regarding the value of the Superior Property is based upon prejudicial and reversible error.

**Crocker's Arguments**

According to Crocker, the factual determinations were not clearly erroneous because there is evidence to support it, *i.e.* Crocker's testimony, Crocker's appraiser's testimony and the appraisal itself. Indeed, Crocker properly notes: "If two views of the evidence in a case are permissible, the choice between those views made by the fact finder is not clearly

erroneous." *Michigan v. City of Allen Park*, 954 F.2d 1201 (6th Cir. 1992)(citing *United States v. Yellow Cab Co.*, 338 US 338 (1949)).

Crocker contends that PennyMac's argument can be construed to imply that the Bankruptcy Court Judge should have recused for personal bias under 28 U.S.C.§ 455. However, Crocker states that "the grounds for recusal must be of character to seriously impair the Court's impartiality and so clearly obvious and sufficient enough to overcome the presumption of the Court's integrity." *Berger v. United States*, 255 U.S. 22 (1921); *Matter of Pritchard & Baird, Inc.*  16 B.R. 16, (Bankr. D.N.J. 1981) .

Crocker argues that "every judge approaches every case with some level of knowledge and some legal predispositions and opinions. [. . . ]  Some of those experiences are pertinent to our making a more enlightened decision."  *In re Johnson-Allen*, 68 B.R. 812, (Bankr. E.D. Pa. 1987).  According to Crocker, only knowledge about the case facts learned outside of the trial may pose problems, specifically when the judge harbors "a deep-seated favoritism or antagonism that would make fair judgment impossible."  *Liteky v. United States,* 510 U.S. 540 (1994).  Extrajudicial knowledge must be more case specific, *i.e.,* narrowly focused on the specific disputed facts of the case.  Crocker contends that facts will not disqualify if the judge learned them merely as a member of the public as in *In re Hatcher,* 150 F.3d 631 (7th Cir. 1998) and *In re Owens Corning*, 305 B.R. 175 (Dist. Del 2004).

Because, in the underlying proceeding, the Bankruptcy Court Judge's extrajudicial knowledge was not related to the specific property and was not the type of narrowly focused facts which would constitute disputed evidentiary facts concerning the proceeding, Crocker contends that there was no deep-seated favoritism or antagonism that made fair judgment

impossible.  Further, Crocker cites the Bankruptcy Court stating: "I have to base my opinion on the record in the case" and "I do not have any specific extra special knowledge about any of these properties."  Thus, Crocker believes that the Bankruptcy Court Judge carefully considered the evidence on the record and evaluated each witness.   Finally, Crocker insists that his own testimony constituted an independent factual basis and contributed to the Court's understanding of the condition of the Property and of the neighborhood.  Thus, according to Crocker, the Bankruptcy Court evaluated the strengths and weaknesses of both appraisals, even commenting on minor errors ("a little sloppier and less detailed").  Crocker concludes that the Bankruptcy Court Judge used his pertinent personal knowledge only to make a more enlightened decision, because it is true that "the neighborhood might affect the Property." Therefore, in Crocker's view, the Judge had a rational basis for giving greater weight to Crocker's appraiser's report.

In its Reply Brief, PennyMac counters that recusal was never an issue and that Crocker's assertions concerning recusal should be disregarded.  PennyMac argues that, absent the Bankruptcy Court weighing its own experience and familiarity with the neighborhood, the valuation decision does not comport with the evidence in the record.   PennyMac concedes that every judge approaches every case with some level of knowledge, but argues that it remains impermissible for a court to rely on its knowledge with regard to case specific facts.

**The Bankruptcy Court Decision Was Supported By The Evidence At Trial**

The Bankruptcy Court Judge admitted he has knowledge of the area which might affect his opinion but recognized that he must base his decision on the evidence in the record. (See Hearing Transcript, April 12, 2016, p. 178).  Following the *Buckland* rule cited by

PennyMac in its brief, the Bankruptcy Court Judge evaluated both appraisers' education, experience, familiarity with the subject of the appraisal, manner of conducting the appraisal, testimony on direct examination and cross-examination.

First, the Bankruptcy Court based its decision on testimony offered by Crocker, Crocker's appraiser and PennyMac's appraiser and on the exhibits. Under established rules of evidence, the owners of a property can give their personal opinion of the value without being an expert. Thus, Crocker's views on the valuations of the property are admissible. (See transcript at 175). The Bankruptcy Court Judge admitted that Crocker's values pretty much reflected what his appraiser's values were and; thus, Crocker's opinion did not add much regarding the weight attributed to one expert appraiser versus the other appraiser. *Id.* However, Crocker's statements concerning "the conditions of the properties and condition of the neighborhood [...], efforts to try to sell the property [..] are relevant" and useful to the Court's analysis. *Id.*

Second, the Bankruptcy Court Judge also accorded weight to the appraiser's education, experience and familiarity with the subject of the appraisal. The Court noted that Crocker's certified Ohio appraiser lives and works in the Cleveland Heights area and is more familiar with the particular neighborhoods and the conditions that might affect the properties' values, unlike PennyMac's appraiser who is not familiar with the area. *Id.* at 176. However, the Bankruptcy Court Judge admitted that Crocker's appraisal is "a little sloppier and less detailed" than PennyMac's appraisal.

Further, the Bankruptcy Court Judge considered, as PennyMac's appraiser conceded, that the sales comparison is the best valuation method. *Id*. at182. Yet, the lack of income

approach used in Crocker's appraisal did not decrease the credibility of Crocker's appraisal. *Id.* The Bankruptcy Court Judge concluded that PennyMac's appraiser had "a little better methodology and a little more detail but did not have the familiarity with the neighborhood and did not use perhaps the best comparables, so each appraiser had different strengths and weaknesses." *Id*. at 183.

Also, before valuing the Superior Property, the Bankruptcy Court Judge pointed out that the Property was on a busy road and was not in a "homey neighborhood that would be attractive to a single-family homeowner," needed significant upkeep, had significant maintenance costs and is close to the East Cleveland border and "negative externalities are the fact that there are some negative conditions associated with the properties north of Mayfield and the busy street, and that sort of depresses the value of the Superior property..." *Id* at 180-81. Each of these considerations were offered as part of Winslow's appraiser's testimony and not based on the Bankruptcy Judge's own knowledge.

The Bankruptcy Court Judge valued the Superior Property at $55,000. In reaching that value, the Bankruptcy Court Judge considered the fact that the property is a single family home and that the location was not near other single family homes, therefore, it was more likely a rental property and not attractive to a potential homeowner. The Bankruptcy Court Judge took into account the location of the Superior Property, at least one comparable sale and the evidence showing it would be difficult to find a buyer. He considered the testimony on the property's condition, maintenance costs, taxes and utilities before reaching his conclusion on the valuation.

The Bankruptcy Court Judge did not err nor abuse his discretion when he valued the

Superior Property at $55,000, because although he was admittedly familiar with the area, the Judge's decision was rationally supported by all the evidence on the record.

### III. CONCLUSION

Upon review of the briefs, arguments and applicable law, and for the reasons articulated above, the final judgment, dated April 13, 2016, issued by U.S. Bankruptcy Judge Arthur I. Harris, valuing the Superior Property at $55,000 is affirmed.

IT IS SO ORDERED.

DATE: October 20, 2016

       /S/Christopher A. Boyko
CHRISTOPHER A. BOYKO
United States District Judge